1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA**

10

11   Debra Hurd,                    )   2:13-cv-5205-RSWL-MRW
                                     )
12              Plaintiff,           )
                                     )
13      vs.                          )   **ORDER re: Defendant's**
                                     )   **Motion for Summary**
14                                   )   **Judgment** [29]
                                     )
15   American Income Life           )
     Insurance,                      )
16                                   )
                                     )
17              Defendant.           )
                                     )
18   _____)

19        Currently before the Court is Defendant's Motion

20   for Summary Judgment [29].   Defendant American Income

21   Life Insurance ("Defendant" or "AIL") moves for summary

22   judgment on all of Plaintiff Debra Hurd's ("Plaintiff")

23   remaining six claims: (1) Discrimination on the Basis

24   of Disability and/or Medical Condition in violation of

25   Cal. Gov't Code § 12940(a); (2) Retaliation for

26   Complaining of Discrimination on the Basis of

27   Disability and/or Medical Condition in violation of

28   Cal. Gov't Code § 12940(h); (3) Failure to Accommodate

                              1

Disability and/or Medical Condition in violation of
Cal. Gov't Code § 12940(m); (4) Failure to Engage in
the Interactive Process in violation of Cal. Gov't Code
§ 12940(n); (5) Wrongful Termination of Employment in
violation of California Public Policy; and (6)
Retaliation for Taking CFRA Leave in violation of Cal.
Gov't Code § 12945.2.  Def.'s Mot. Summ. J. ("Mot.")
1:9-11; Notice of Removal, Ex. A ("Compl."), ECF No. 1.

The Court, having reviewed all papers submitted
pertaining to this Motion, **NOW FINDS AND RULES AS
FOLLOWS:**  The Court **GRANTS** Defendant's Motion for
Summary Judgment [29].

**I. BACKGROUND**

**A.   Factual Background**

1.   <u>Parties & Job Description</u>

Plaintiff is an individual resident of Los Angeles
County, California.  Compl. ¶ 1.  Defendant AIL is a
company incorporated in Indiana with a principal place
of business in Waco, Texas.  Notice of Removal ¶ 9.
Plaintiff was employed by Defendant AIL as a Marketing
Specialist in Public Relations from 2005 to 2012.
Def.'s Resp. to Pl.'s Add'l Material Facts ¶ 1, ECF No.
45-3; Compl. ¶ 10.  The Marketing Specialist position
at American Income Life Insurance Company is described
as a position that "generate[s] leads that will result
in life production for the Company . . . by building
relationships and partnerships through direct personal
contact with group prospects, making presentations and

2

handling any concerns that may arise."  Mot. Summ. J.,
McCandless Decl. ("McCandless Decl."), Ex. C at 85, ECF
No. 29-2.   Plaintiff's position as a Public Relations
Marketing Specialist with AIL required "traveling from
place to place within Southern California to attend
meetings, functions, events, and gatherings of various
groups including . . . union locals for the purpose of
generating leads for the sales of insurance policies to
the groups' memberships"; "direct contact with group
prospects and group policyholders"; "a minimum of 20
sales calls per week," which could "either be scheduled
appointments, drop-bys, or meetings with groups to get
mailings out"; "servicing groups . . ., including
handling of inquiries and complaints, assisting with
death claims, officer report forms, and relationship
building"; "develop[ing], maintain[ing], and grow[ing]
relationships through direct field contact with various
unions . . . associations and community organizations";
"deliver[ing] informational products, giveaway items,
and food"; and "administrative activities incidental to
his or her field sales calls, such as mailings to the
groups to which he or she is assigned and reporting on
his or her activities."  Def.'s Resp. to Pl.'s
Interrogs. 5:12-6:20, ECF No. 29-5; see McCandless
Decl., Ex. C at 85.  In Plaintiff's July 23, 2014
Deposition, Plaintiff agreed to this description of her
AIL job duties.  McCandless Decl., Ex. A at 16-17
("Pl.'s July 23, 2014 Dep." 39:16-40:16).

On May 13, 2013, Plaintiff testified in a deposition that her "job duties" were "[g]oing to unions and nonunion groups to have them participate in insurance" via driving, as well as "visiting them," "doing service calls," and "delivering sometimes food to them for their members." Mot. Summ. J., Ex. N at 131-32 ("Pl.'s May 13, 2013 Dep." at 27:7-25, 29:1-24); Pl.'s July 23, 2014 Dep. 27:5-29:7 (confirming accuracy of May 13, 2013 deposition testimony). Plaintiff confirmed in her May 13, 2013 deposition that "most of, if not all of . . . [her] working time was spent on the road," with her in-office time averaging "[m]aybe once a week." Pl.'s May 13, 2013 Dep. 29:16-22; Pl.'s July 23, 2014 Dep. 29:1-7 (confirming accuracy of May 13, 2013 deposition testimony). In a July 23, 2014 deposition, Plaintiff explained that her average working day as a Marketing Specialist for AIL required four out of five days on the road from about 6:30 AM to 3:00 PM, which Plaintiff characterized as "a lot of driving every week." Pl.'s July 23, 2014 Dep. 30:13-33:25, 39:13-15. Plaintiff's territory included "[a]ll Southern California counties." Id. at 33:3.

2.   Plaintiff's Injury & Disability Leave

On July 28, 2011, Plaintiff "injured her back on the job after first driving to Buellton on business, then lifting a heavy box," or after reaching into the passenger side of her car for a "thin" folder. Pl.'s May 13, 2013 Dep. 21:4-22:2; Compl. ¶ 11 (stating that

4

the injury was due to lifting a heavy box); Pl.'s July 23, 2014 Dep. 63:5-64:12, 66:23-67:3 (stating that the injury was due to reaching into the passenger side of her car for a thin folder, but that the injury could have been due to lifting a heavy box prior to reaching for the thin folder); Mot. Summ. J., Ex. P at 142 (in a worker's compensation claim, stating that the injury occurred "while loading and unloading product from vehicle and driving.").

On July 28, 2011, Plaintiff sent AIL a disability certificate signed by Jay R. Robbins, a chiropractor who saw and treated Plaintiff after her July 28, 2011 injury.  Pl.'s July 23, 2014 Dep. 68:3-69:5; McCandless Decl., Ex. X at 189-90 ("Robbins Dep." 13:2-14:2, 23:8-23); McCandless Decl., Ex. Y (copy of the disability certificate).  The disability certificate requested that AIL give Plaintiff a leave of absence for a lower back injury from July 29, 2011, to August 5, 2011. Pl.'s July 23, 2014 Dep. 68:3-69:5; Robbins Dep. at 13:2-14:2, 23:8-23; McCandless Decl., Ex. Y.  The certificate requesting disability leave certified that Plaintiff was "totally disabled from work."  McCandless Decl., Ex. Y.  Defendant granted Plaintiff's request for leave.  Pl.'s July 23, 2014 Dep. 69:1-5.

Plaintiff subsequently submitted doctor's notes to AIL, and AIL granted Plaintiff three additional periods of leave, extending Plaintiff's leave to August 29, 2011, then to September 8, 2011, and finally to

December 31, 2011.  Def.'s Resp. to Pl.'s Statement of
Genuine Disputes ¶¶ 15-19, ECF No. 45-2.  AIL granted
Plaintiff these further disability leaves based on the
doctor's notes and medical certifications signed by
Vincent Tristan, a physician's assistant ("P.A.
Tristan").  Id.; see McCandless Decl., Ex. Z at 194-200
("Tristan Dep." 9:10-14:21); McCandless Decl., Exs. AA-
EE.  The medical certifications, signed by both P.A.
Tristan and Plaintiff, stated that Plaintiff was unable
to perform "work of any kind" and was unable to
"perform the functions of [Plaintiff's work] position."
Tristan Dep. 9:10-14:21; McCandless Decl., Exs. AA-EE;
Def.'s Resp. to Pl.'s Statement of Genuine Disputes ¶
18; Pl.'s July 23, 2014 Dep. 111:11-112:23.

On October 17, 2011, during Plaintiff's leave,
Plaintiff emailed Donna Tucker of AIL's human resources
department to ask whether Plaintiff could work from
home by "do[ing] any death claims or contacting my
groups."  Pl.'s July 23, 2014 Dep. 107:25-108:23;
McCandless Decl., Ex. K at 125.  On October 24, 2011,
Tucker responded to Plaintiff and explained that
Plaintiff could not do any work from home because
Plaintiff's medical certification had "certified
[Plaintiff] as unable to perform work of any kind;"
Tucker also noted that because the Marketing Specialist
position required "physical presence and constant
personal networking," Plaintiff's position "simply
[could not] be done from home."  McCandless Decl., Ex.

1 | K at 125; Pl.'s Dep. 108:24-110:20.

2 |       3.   Termination Letter

3 |       When Plaintiff requested additional leave through
4 | March 12, 2012, AIL responded by notifying Plaintiff by
5 | letter dated January 26, 2012, that due to the
6 | "increasingly difficult problem" of holding Plaintiff's
7 | position open for six months, AIL had "reached the
8 | business decision that AIL can no longer keep
9 | [Plaintiff's] position open," and that AIL was
10 | "terminating" Plaintiff's position "effective today."
11 | McCandless Decl., Ex. L at 126-27; Pl.'s July 23, 2014
12 | Dep. 121:22-122:24.   AIL hired another individual to
13 | fill Plaintiff's Marketing Specialist position on March
14 | 5, 2012.   Crosby. Decl. ¶ 7, ECF No. 29-7.

15 |       4.   Plaintiff's Description of Her Disability

16 |       On August 9, 2011, Plaintiff submitted to the
17 | California Employment Development Department (CEDD) a
18 | disability insurance benefits claim that Plaintiff
19 | signed under penalty of perjury.   Pl.'s Depo 148:1-21;
20 | McCandless Decl., Ex. H at 118-20.   In Plaintiff's
21 | August 9, 2011 CEDD claim, Plaintiff declared to be
22 | unable to perform the following "functions required by
23 | [her] occupation" because of her July 2011 injury:
24 | "walking," "sitting," "standing," "bending,"
25 | "kneeling," "twisting," "lifting," "carrying,"
26 | "driving," "reading," "writing," "typing," "filing,"
27 | and "concentrating."   McCandless Decl., Ex. H at 119;
28 | Pl.'s July 23, 2014 Dep. 148:1-16.

On October 31, 2012, Plaintiff filed a workers'
compensation claim for the July 28, 2011 injury, which
she described as "continuous trauma injuring back" that
occurred "while loading and unloading product from
vehicle and driving."  Pl.'s July 23, 2014 Dep. 145:13-
147:17; McCandless Decl., Ex. P at 142.  On May 13,
2013, Plaintiff gave deposition testimony in her
worker's compensation case that since July 2011, she
has experienced "constant" back pain and that even in
May 2013, Plaintiff still could not "drive long
distances," "sit long" or "do things."  Pl.'s May 13,
2013 Dep. 39:23-40:22.

In July 2014, Plaintiff testified in her deposition
for this case that severe pain in her lower back
prevented her from driving and engaging in physical
activity during her entire period of leave in 2011.
Pl.'s July 23, 2014 Depo 70:3-71:2.  Plaintiff
testified that she was unable to "go out in the field"
during her leave and would still be unable to "go out
in the field" at the time of the July 2014 deposition
because her back injury has made her unable to drive.
Id. at 158:5-24.  Plaintiff testified that the last
time she was employed was in 2011 with AIL and that
Plaintiff has since not searched for any work due to
her physical condition.  Id. at 14:21-15:4.  Plaintiff
testified that her back pain has been "constant" since
July 2011.  Id. at 160:11-13.  Plaintiff testified that
she was "not able to do the regular duties of PR rep"

1  during her leave because she was not able to drive long
2  distances, and that she would still be unable to
3  perform the regular duties of the Marketing Specialists
4  because she cannot drive.  Id. at 195:11-20.
5  **B. Procedural Background**
6      Plaintiff initially filed this action in California
7  Superior Court on May 30, 2013.  Notice of Removal ¶ 1,
8  Ex. A.  Notice of Removal [1] was filed by Defendant on
9  July 18, 2013.  Plaintiff's Motion to Remand [7] the
10 case back to state court was denied [15].  Plaintiff's
11 Complaint named two other defendants, "Elena Altinksy"
12 and "Rachel Valdez,"[1] and included a Seventh Cause of
13 Action, all of which were later dismissed with
14 prejudice.  Dckt. ## 19-22; see Compl. ¶¶ 3-4, 63-67.
15     Defendant filed the present Motion for Summary
16 Judgment ("Motion") on September 16, 2014, with the
17 hearing set for October 28, 2014.  Def.'s Mot. Summ. J.
18 ("Mot."), ECF No. 29.  The Motion was taken under
19 submission on October 22, 2014.  Dckt. # 46.  Plaintiff
20 filed her Opposition [33] to Defendant's Motion on
21 September 30, 2014.  Defendant filed its Reply [45] on
22 October 14, 2014.
23               **II. LEGAL STANDARD**
24     Federal courts sitting in diversity "apply state
25 substantive law and federal procedural law."  Snead v.
26 Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th
27 ─────────────────
28     [1] The names "Elana Altinksy" and "Rachel Valdez" were
   incorrect names.  Notice of Removal ¶ 3.

Cir. 2001) (internal quotation marks omitted) (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 426 (1996)).   Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56, the party moving for summary judgment has the initial burden of proof to show "no genuine dispute as to any material fact."   Fed. R. Civ. P. 56(a).   The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact.   Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000); see Fed. R. Civ. P. 56(a).   When a defendant moves for summary judgment, summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial."   Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. ANALYSIS

**A.   First Cause of Action: Discrimination on the Basis of Disability and/or Medical Condition in violation of FEHA (Cal. Gov't Code § 12940(a))**

Under California's Fair Employment and Housing Act (FEHA), it is an "unlawful employment practice" for an

employer, because of physical disability or medical condition, "to discharge the person from employment" or "discriminate against the person in compensation or in terms, conditions, or privileges of employment."  Cal. Gov't Code § 12940(a).  FEHA "does not prohibit an employer from refusing to hire or discharging an employee" with a physical disability or a medical condition where the employee, because of her physical disability or medical condition, "is unable to perform his or her essential duties even with reasonable accommodations."  Cal. Gov't Code § 12940(a)(1)-(2).

To "prevail on a discriminatory discharge claim under section 12940(a), an employee bears the burden of showing (1) that he or she was discharged because of a disability, and (2) that he or she could perform the essential functions of the job with or without accommodation (in the parlance of the [ADA], that he or she is a qualified individual . . . .)." <u>Liu v. City & Cnty. of San Francisco</u>, 150 Cal. Rptr. 3d 385, 392 (Cal. Ct. App. 2012).  The California Supreme Court held in 2007 that a plaintiff bringing a Disability Discrimination claim under FEHA must prove that he or she was a "qualified individual." <u>Green v. State</u>, 165 P.3d 118, 119 (Cal. 2007).  A "qualified individual" is an individual who "can perform the essential functions of the job with or without reasonable accommodation." <u>Lui</u>, 150 Cal. Rptr. 3d at 394; <u>see also</u> <u>Kelley v. Corrections Corp. of Am.</u>, 750 F. Supp. 2d 1132, 1139

1   (E.D. Cal. 2010).  Thus, "[a]n employer is not liable

2   for discharging an employee with a disability unless

3   the employee was able to perform the essential

4   functions of his or her job with or without

5   accommodation."  Nadaf-Rahrov v. Neiman Marcus Grp.,

6   Inc., 83 Cal. Rptr. 3d 190, 211 (Cal. Ct. App. 2008).

7       California courts use the McDonnell Douglas burden-

8   shifting test when analyzing discrimination claims

9   under FEHA.  Earl v. Nielsen Media Research, Inc., 658

10  F.3d 1108, 1112 (9th Cir. 2011) (citing McDonnell

11  Douglas Corp. v. Green, 411 U.S. 792 (1973) and Guz v.

12  Bechtel Nat'l, Inc., 8 P.3d 1089, 1113 (Cal. 2000)).

13  "Under the three-part McDonnell Douglas test, the

14  plaintiff bears the initial burden of establishing a

15  prima facie case of employment discrimination"; then,

16  once the plaintiff has done so, "the burden shifts to

17  the employer to articulate a legitimate,

18  nondiscriminatory reason for its actions."  Earl, 658

19  F.3d at 1112.  If the employer "articulates a

20  legitimate reason, the plaintiff must raise a triable

21  issue that the employer's proffered reason is pretext

22  for unlawful discrimination," but the "ultimate burden

23  of persuasion remains with the plaintiff."  Id.

24      Not only has Plaintiff failed to provide evidence

25  showing she was a "qualified individual," Plaintiff's

26  own testimony proves that she was *not* a "qualified

27  individual."  Plaintiff testified that she agreed that

28  AIL's description of the essential duties of her job

12

included "traveling from place to place within Southern California to attend meetings, functions, events, and gatherings of various groups," "direct contact with group prospects and group policyholders," "a minimum of 20 sales calls per week," the duty to "develop, maintain, and grow relationships through direct field contact with various [customer groups," and "deliver[ing] informational products, giveaway items, and food."  Pl.'s July 23, 2014 Dep. 39:22-40:16; Def.'s Resps. to Pl.'s Interrogatories 5:12-6:20. Plaintiff testified that her position with AIL required that "a lot of driving" and that most of her working time be "on the road."  Pl.'s July 23, 2014 Dep. 30:2-33:25, 39:13-15.  Plaintiff stated that her job duties also included carrying her "computer, files, [and] materials" from her car to the meeting locations. Pl.'s July 23, 2014 Dep. 27:5-28:25, 30:25-33:15. Plaintiff testified that her AIL position required a "lot of driving every week."  Id. at 39:13-15.

  1.  Without Accommodation

  Plaintiff's own testimony establishes that driving was an essential duty of Plaintiff's position with AIL. Plaintiff testified that from her July 2011 injury to at least the date of her July 2014 deposition, Plaintiff was unable to drive.  Pl.'s July 23, 2013 Dep. 14:21-15:4, 70:3-71:2, 158:13-24, 195:11-196:4. Thus, Plaintiff's own testimony proves that at the time AIL fired her, she was unable to perform the "essential

13

functions" of her job without accommodation.  <u>See</u>
<u>Nadaf-Rahrov</u>, 83 Cal. Rptr. 3d at 211.  Plaintiff's
subsequent Declaration, attached to her Opposition to
Defendant's Motion for Summary Judgment, directly
contradicts Plaintiff's prior sworn testimony and is
self-serving.  <u>See</u> Pl.'s Decl. ¶ 16, ECF No. 38.
Plaintiff cannot create a genuine issue of material
fact by directly contradicting her prior sworn
testimony.  <u>Hambleton Bros. Lumber Co. v. Balkin</u>
<u>Enters., Inc.</u>, 397 F.3d 1217, 1225 (9th Cir. 2005)
("Under our 'sham' affidavit rule, 'a party cannot
create an issue of fact by an affidavit contradicting
his prior deposition testimony.'").

    2.  <u>With Accommodation</u>

    Plaintiff requested two accommodations: working
from home and an extended disability leave through
March 12, 2012.  On October 17, 2011, Plaintiff emailed
AIL's human resources representative, Donna Tucker, to
ask whether Plaintiff could "do any death claims" or
contact any of her groups from home while she was on
leave.  Pl.'s July 23, 2014 Dep. 107:25-108:23;
McCandless Decl., Ex. K at 125.  AIL denied this
accommodation; Donna Tucker from AIL's human resources
responded to Plaintiff and stated that Plaintiff's
position could not be performed from home because
Plaintiff's medical certification did not allow her to
do work of any kind and because Plaintiff's position
with AIL required "physical presence and constant

personal networking."  Pl.'s Dep. 108:24-110:20;
McCandless Decl., Ex. K at 125.  Plaintiff signed the
two medical certifications that stated she was "unable
to perform work of any kind" and to perform the
functions of her position.  McCandless Decl., Exs. AA-
EE; Pl.'s July 23, 2014 Dep. 111:11-112:23.

     Though Plaintiff seemed to be communicating to AIL
that she was able to work from home to some extent,
this falls short of showing that Plaintiff was able to
perform the *essential functions* of her position with an
accommodation.  See Nadaf-Rahrov, 83 Cal. Rptr. 3d at
211.  The essential functions of Plaintiff's position
included driving, walking, and carrying materials, all
of which Plaintiff testified she was unable to do while
she was on leave.  See Pl.'s July 23, 2013 Dep. 14:21-
15:4, 70:3-71:2, 111:11-112:23, 158:13-24, 195:11-
196:4.  Even if AIL had granted Plaintiff's requested
accommodation to work from home, Plaintiff still would
not have been able to perform the essential functions
of her position.

     Plaintiff also requested the accommodation of an
extended disability leave into March 12, 2012.  The
doctor's note requesting leave into March 2012 stated
only, "Please continue disability until March 12,
2012."  McCandless Decl., Ex. FF.  AIL had previously
received two medical certifications from Plaintiff,
both of which were signed by Plaintiff and stated that
Plaintiff was unable to perform "work of any kind" and

unable to perform the functions of Plaintiff's position.  McCandless Decl., Exs. AA, DD; see Pl.'s July 23, 2014 Dep. 111:4-112:23, 246:25-247:24; Tristan Dep. 9:10-10:13.  Plaintiff testified that not only would she not have been able to drive or engage in physical activity in March 2012, but that she has been unable to drive since the July 2011 injury to at least the July 2014 date of her deposition related to this Action.  Pl.'s July 23, 2014 Dep. 158:5-24.  Because driving was an essential function of Plaintiff's position with AIL, Plaintiff has not shown that her requested accommodation—extended leave into March 2012—would have enabled her to "perform the essential functions" of her position with AIL.  See Nadaf-Rahrov, 83 Cal. Rptr. 3d at 211.  Because Plaintiff has failed to show that she was a "qualified individual," Defendant is entitled to summary judgment on this claim.  See Cleveland, 526 U.S. at 805-06.

**B.  Second Cause of Action: Retaliation for Complaining of Discrimination on the Basis of Disability and/or Medical Condition in violation of FEHA (Cal. Gov't Code § 12940(h))**

FEHA makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov't Code §§

12940(h)).  To establish a prima facie case of retaliation under FEHA, a plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  Scotch v. Art Inst. of Cal.-Orange Cnty., Inc., 93 Cal. Rptr. 3d 338, 366 (Cal. Ct. App. 2009) (internal quotation marks omitted).

"Protected activity" is when an employee "has complained of or opposed conduct that the employee reasonably believes" is discriminatory, even if the conduct is not actually prohibited by the FEHA. Yanowitz v. L'Oreal USA, Inc., 116 P.3d 1123, 1131 (Cal. 2005).  While protected activity can "take many forms," "an employee's inarticulate belief that an employer is engaging in discrimination will not suffice to establish protected conduct . . . where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination."  Id. at 1130, 1133.  Requests for accommodation, without more, are not "protected activity."  Rope v. Auto-Chlor Sys. of Wash., Inc., 163 Cal. Rptr. 3d 392, 407 (Cal. Ct. App. 2013).  A causal link does not exist unless the employer "knew the employee was engaged in activities in opposition to the employer at the time of the alleged retaliation."  Rope, 163 Cal. Rptr. 3d at 408.

17

Plaintiff fails to provide any evidence that she "engaged in protected activity," as there is no evidence that Plaintiff complained of or in any way opposed discriminatory conduct by AIL prior to AIL firing her. <u>See</u> Opp'n 18:25-20:17. Plaintiff's mere requests for accommodations and requests for disability leave, without more, are not "protected activity." <u>See</u> <u>Rope</u>, 163 Cal. Rptr. 3d at 407. Plaintiff also fails to show a causal link, as there is no evidence that AIL was aware of any opposition by Plaintiff at the time AIL fired Plaintiff. <u>Rope</u>, 163 Cal. Rptr. 3d at 408. Thus, Defendant is entitled to summary judgment on this claim. <u>See</u> <u>Cleveland</u>, 526 U.S. at 805-06.

**C.    Third Cause of Action: Failure to Accommodate Disability and/or Medical Condition in violation of FEHA (Cal. Gov't Code § 12940(m))**

The elements of a failure to accommodate claim are "(1) the plaintiff has a disability under FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." <u>McCarthy v. R.J. Reynolds Tobacco Co.</u>, 819 F. Supp. 2d 923 (E.D. Cal. 2011) (citing <u>Scotch</u>, 93 Cal. Rptr. 3d 338). A "reasonable accommodation" is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." <u>Scotch</u>, 93 Cal. Rptr. 3d at 358 (internal quotation marks omitted). An employer must

make a reasonable accommodation for a disabled employee "unless the employer can demonstrate that doing so would impose an 'undue hardship.'" <u>Spitzer v. The Good Guys, Inc.</u>, 96 Cal. Rptr. 2d 236 (Cal. Ct. App. 2000). While a reasonable accommodation "might include reassignment if a vacant position [is] open; the employer [is] not required . . . to create a new position." <u>Scotch</u>, 93 Cal. Rptr. 3d at 359.  A proposed accommodation is "not reasonable" if "it is not a 'modification or adjustment to the workplace' necessary to enable [the plaintiff] to perform the essential functions of his position." <u>Id.</u> at 360; <u>see Nadaf-Rahrov</u>, 83 Cal. Rptr. 3d at 210, 212-13 ("[A]n employee's ability to perform the essential functions of a job is a prerequisite to liability under section 12940(m)").

As discussed above, Plaintiff has failed to show she was a "qualified individual."  Because Plaintiff cannot prove she was a "qualified individual," her claim for Failure to Accommodate fails, and Defendant is entitled to summary judgment on this claim.  <u>See Cleveland</u>, 526 U.S. at 805-06.

**D.  Fourth Cause of Action: Failure to Engage in the Interactive Process in violation of FEHA (Cal. Gov't Code § 12940(n))**

FEHA makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective

reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "[S]ection 12940(n) imposes liability only if a reasonable accommodation was possible," and "the burden of proving the availability of a reasonable accommodation rests on the employee." Nadaf-Rahrov, 83 Cal. Rptr. 3d at 216, 218.

Here, Plaintiff has not asserted that an alternative position with AIL existed, nor has Plaintiff shown that any requested accommodation would have enabled her to perform the essential functions of the position she sought to perform with AIL. Scotch, 93 Cal. Rptr. 3d at 359. Because Plaintiff has not shown that a reasonable accommodation was possible, AIL cannot be held liable for failure to engage in the interactive process. Nadaf-Rahrov, 83 Cal. Rptr. 3d at 216, 218. "[A]n employer's duty to engage in an interactive process to identify a reasonable accommodation (as described in the EEOC's interpretive guidance,[1] which has been affirmed by the California Legislature) extends only to accommodations that would

---

[1] "As a reasonable accommodation, an employer or other covered entity shall ascertain through the interactive process suitable alternate, vacant positions and offer an employee such positions, for which the employee is qualified . . . ." Cal. Code Regs. tit. 2 § 11068(d)(1); Capote v. CSK Auto, Inc., No. 12-cv-02958-JST, 2014 WL 1614340, at *10 (N.D. Cal. Apr. 22, 2014).

enable the employee to perform the essential functions of the position." <u>Id.</u> at 211.  Thus, Defendant is entitled to summary judgment on this claim.  <u>See</u> <u>Cleveland</u>, 526 U.S. at 805–06.

**E.    Fifth Cause of Action: Wrongful Termination of Employment in violation of California Public Policy, based on Plaintiff's claim for Discrimination on the Basis of Disability and/or Medical Condition in violation of FEHA**

To "recover in tort for wrongful discharge in violation of public policy, the plaintiff must show the employer violated a public policy affecting 'society at large,'" and the "policy at issue must be substantial, fundamental, and grounded in a statutory or constitutional provision." <u>Holmes v. Gen. Dynamics Corp.</u>, 22 Cal. Rptr. 2d 172, 176 (Cal. Ct. Capp. 1993). The plaintiff bears the burden of "identifying the specific statute(s) or constitutional provision(s)" on which the plaintiff bases her public policy claim.  <u>Day v. Sears Holdings Corp.</u>, 930 F. Supp. 2d 1146, 1189 (C.D. Cal. 2013).  If the statutory or constitutional claims underlying a plaintiff's public policy claim fail, the plaintiff's public policy also fails.  <u>Id.</u> at 1191-92; <u>see</u> <u>Hanson v. Lucky Stores, Inc.</u>, 87 Cal. Rptr. 2d 487 (Cal. Ct. App. 1999).

Because, as discussed above and below, all of Plaintiff's statutory (FEHA and CFRA) claims fail, Plaintiff's claim for Wrongful Termination in violation

of California Public Policy also fails.  <u>Hanson</u>, 87
Cal. Rptr. 2d at 496-97.  Defendant is entitled to
summary judgment on this claim.  <u>See</u> <u>Cleveland</u>, 526
U.S. at 805-06.

**F.   Sixth Cause of Action: Retaliation for Taking CFRA Leave in violation of the California Family Rights Act (CFRA) (Cal. Gov't Code 12945.2)**

Under the CFRA, it is unlawful for an employer "to
refuse to grant a request" for CFRA leave made by an
eligible employee for a qualifying reason.  Cal. Gov't
Code § 12945.2(a); <u>Jadwin v. Cnty. of Kern</u>, 610 F.
Supp. 2d 1129, 1175 (E.D. Cal. 2009).  A prima facie
showing of Retaliation for Taking CFRA Leave requires
proof that: "(1) the defendant was an employer covered
by CFRA; (2) the plaintiff was an employee eligible to
take CFRA leave; (3) the plaintiff suffered an adverse
employment action, such as termination . . . because of
her exercise of her right to CFRA leave." <u>Dudley v.
Dep't of Transp.</u>, 108 Cal. Rptr. 2d 739 (Cal. Ct. App.
2001).  It is not unlawful under the CFRA for an
employer to refuse to grant a request for medical leave
by an employee "if the employer employs less than 50
employees within 75 miles of the worksite where that
employee is employed."  Cal. Gov't Code § 12945.2(b).

Here, Plaintiff has not rebutted Defendant's
evidence that AIL had no more than twelve employees
during Plaintiff's leave and at the time AIL fired
Plaintiff.  Thus, Plaintiff cannot show that Defendant

was "an employer covered by the CFRA," nor that she was an "employee eligible to take CFRA leave." <u>Dudley</u>, 108 Cal. Rptr. 2d at 744; Cal. Gov't Code § 12945.2(b). Because Plaintiff fails to state a prima facie case of Retaliation for Taking CFRA Leave, Defendant is entitled to summary judgment on this claim. <u>See</u> <u>Cleveland</u>, 526 U.S. at 805–06.

**G.   Punitive Damages**

Defendant requested the Court to rule on the issue of whether Plaintiff was entitled to recover punitive damages, Mot. P&A 24:3-25:4, but because all of Plaintiff's claims fail, this issue is moot.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment [29].


**IT IS SO ORDERED.**

DATED: November 20, 2014

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge